McFarland, J.,
delivered tbe opinion of the court:
On the 30th of July, 1872, .Frederick Need sold to complainant, IVlorine, a tract of land, and gave him a title bond, which shows the price of the land was $720, and that of this sum $186 was paid in hand, and three notfes executed for $178 each, payable, respectively, on the 1st of January, 1874, 1875, and 1876. The bond contains the usual obligation upon the maker to- make title, but concludes with the following unusual stipulation, to wit: “And if the said G. W. Morine should fail to- pay said notes he is not to lose what he has paid, but shall receive it back without interest.”
Need died early in January, 1875, and on the 14th of February, 1876, Morine filed the original bill, in which he charges that he went into possession of the land and has since continued to occupy itias a home for his family; that in addition to the first payment, he has paid the first and second notes and a part of the third, and is entitled to a further credit on account of a horse taken by Reed during the ’late war, the value of which, he says, Reed agreed to allow as a credit upon the land notes. He says that he has been prevented by the stringency of the times and other carxses, from paying the last note in full, and prays, under the clause of the title bond above referred to, that all the payments made by him be refunded, and that he be paid for his improvements. It is, perhaps, doubtful what meaning should be attached to the language in question. But it should not be so construed as to do manifest injustice so- long as any other construction can be given *66 to it consistent with, reason. We think it would be manifestly unjust to hold that the clause in question gave to the complainant the option at any time so long as any part of the price remains unpaid, to rescind the contract and recover back the money paid and the value of the improvements. This would be manifestly giving to the one party all the advantage and making the contract unreasonable and unjust. So that we hold, whatever might be the proper construction of the language in other contingencies that have not arisen, that at all events, the complainant has not the right, to rescind after having clearly evinced his election to execute the contract by paying or making payments and.taking credits upon the notes and remaining in possession of the lands long after the notes had all fallen due, his proposition now made to- rescind being after the lands have depreciated in value. Such is not the letter or spirit of the contract. .We hold, therefore, that the decree of the chancellor refusing a rescission is correct. The claim of the bill for a future credit for the value of the horse specified is fully disproven, and is not, in fact, insisted upon. The original bill was therefore dismissed, and it also follows that the prayer of the cross bill for the enforcement of the vendor’s lien for the balance of purchase money was properly granted. But the cross bill also makes a question as to a credit of $238.30, obtained by the complainant shortly before the death of Heed, in the following manner: The notes in question were placed by Need in the hands- of R. JL Brown, who has since become the personal representative of said Reed. Reed was a colored man, very old and infirm, and .wholly illiterate. About a week before his death the complainant applied to Brown, in the absence of Reed, to enter a credit upon the notes for $238.30, the amount of an account he claimed to have against Reed, and produced an order with Reed’s name signed to- it, directing Brown to enter the credits, which Brown did. lie charges, however, upon information and belief since obtained, that *67 this credit was fraudulent, and that the complainant had no valid claim for this amount against Reed, and that the order was not fairly procured, and the complainant is called upon to answer specifically under oath, and upon his answer and his deposition taken by the opposite party, and the other proof, we are fully satisfied that the transaction was a gross fraud, and the credit improperly obtained. The answer says that the order was obtained from Reed upon a full and fair settlement in the presence of witnesses, that he had the account in the loose leaves of a memorandum book, and the items were read over to Reed and fully deliberated upon and assented to, and that he afterwards destroyed the account, and he cannot remember any of the items except, generally, that it was part for dry goods, groceries, boots, shoes, work and labor done, farm products, and cattle, in his deposition he admits that no one was present when the settlement was made, no items were read over to Reed; that he simply asked the amount of the account and directed an order to be drawn instructing Brown to enter the credit. Although the account run for only a year, and the time was of a -comparatively recent date, he fails altogether to remember or give items or speciify particulars so as to satisfy any fair and unprejudiced mind of the justice of his claim, and there is .besides other evidence that satisfies us that the claim is not just. It does appear, however, that he has a just claim for some items,the amount of which does not clearjy appear.
The decree of the chancellor on this branch of the case will be reversed, and the cause referred to- the clerk of this court to report from the evidence in the record, and such other proof as may be necessary, the amount of complainant’s account against said Reed — and for this amount thus ascertained he will be . entitled to a.credit, but the credit of $238,30 [will], be stricken out and annulled. And when the balance is ascertained the land will be ordered sold, as *68 directed by the chancellor, the complainant in the original bill paying all the costs.